**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
LEROY A. BOISON, JR.,

                          Plaintiff,

                                                    **MEMORANDUM OF**
          -against-                                 **DECISION AND ORDER**
                                                    11-cv-0972 (ADS)(ARL)
INSURANCE SERVICES OFFICE, INC.

                          Defendant.
---------------------------------------------------------X

**APPEARANCES:**

**Beekman Schwartz Kaufman & Livoti, LLP**
*Attorneys for the Plaintiff*
1050 Franklin Avenue
Garden City, NY 11530
          By:     Frank J. Livoti, Esq.
                  Stephanie J. Kaufman, Esq., of Counsel

**Proskauer Rose LLP**
*Attorneys for the Defendant*
Eleven Times Square
New York, NY 10036-8299
          By:     Myron Daniel Rumeld, Esq.
                  Lawrence R. Sandak, Esq., of Counsel

**SPATT, District Judge.**

          The Plaintiff in this case, Leroy A. Boison, Jr. ("the Plaintiff" or "Boison")

commenced this action against his former employer, Insurance Services Office, Inc.

("the Defendant" or "ISO") under the Employee Retirement Income Security Act of

1974 ("ERISA"), 29 U.S.C. § 1001 et seq., to recover payments he is allegedly

entitled to under the Defendant's retirement benefits plan.  The Defendant has now

moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure

12(b)(6) ("Fed. R. Civ. P. 12(b)(6)" or "Rule 12(b)(6)") for failure to state a claim

upon which relief can be granted. For the reasons that follow, the Defendant's motion to dismiss is granted.

## I. BACKGROUND

The following facts are drawn from the Plaintiff's complaint and the documents that were incorporated by reference in the complaint. See Doherty v. Am. Home Prods. Corp., 216 F.3d 1071, No. 99 Civ. 9533 (Table), at *2 (2d Cir. 2000) ("We also consider the Option Plans and April 11 letter because they are referenced in the complaint and form the sole basis for the complaint."); Steger v. Delta Airlines, 382 F. Supp. 2d 382, 385 (E.D.N.Y. 2005) ("Because the Plan is directly referenced in the complaint and is the basis of this action, the Court may consider the Plan in deciding the motion to dismiss.").

The Plaintiff was employed by the Defendant beginning on approximately June 1, 1970, until his retirement on November 17, 2000. During his employment, the Plaintiff claims he was an eligible or vested participant in the Supplemental Executive Retirement Plan ("SERP"), which was created in December 1994 and was terminated as of December 31, 2001. Once SERP was terminated and after the Plaintiff had left the employment of the Defendant, ISO initiated another retirement plan, which is central to this dispute. The Supplemental Cash Balance Plan ("the Plan") became effective beginning January 1, 2002, and was amended and restated on January 1, 2009.

The Plaintiff has not collected benefits under either plan, but as of August 1, 2010, he had received benefits under the Defendant's Pension Plan for Insurance Organizations (the "Qualified Plan"). Both SERP and the Plan are examples of

"Top Hat Plans", which are created to provide additional retirement benefits to select employees with earnings that exceed the limits on earnings that factor into the calculation of benefits under the Defendant's Qualified Plan. These plans are governed by ERISA.

The 2009 Plan, which is the plan the Plaintiff now seeks to recover benefits under, defines an "Employee" as "a common law employee of [ISO and its subsidiaries] who was hired by [ISO or one of its subsidiaries] before March 1, 2005." (Ex. 2 to Gilman Aff. at Art. II § 2.8.) Under the terms of the Plan, "[a]n Employee shall become a participant in the Plan during the first year in which the Employee's Compensation exceeds the limitations under Code Section 401(a)(17) for that year . . ." (Ex. 2 to Gilman Aff. at Art. III § 3.1.) It also provides that benefits are to **be** payable "upon the later of the Participant's Separation from Service or attainment of age 62." (Ex. 2 to Gilman Aff. at Art. VI § 6.1.)

The Defendant serves as the Plan Administrator. As the Plan Administrator, ISO has "the exclusive right and discretionary authority to construe the terms of the Plan, to resolve any ambiguities, and to determine any questions which may arise in connection with the Plan's application or administration including, but not limited to, determination of eligibility for benefits and the amount of any benefit." (Ex. 2 to Gilman Aff. at Art. VIII § 8.1.) Notably, as the employer, the Defendant is also the payor of the benefits under the unfunded Plan.

On or about July 29, 2010 and August 19, 2010, the Plaintiff filed a claim for retirement benefits under the Plan. On August 23, 2010, the Defendant sent a letter to the Plaintiff, denying his claim. The letter stated the reason for the denial,

namely that the term "employee" did not include former employees of ISO or its subsidiaries, so that only employees as of January 1, 2002 or became hired after that date were potentially eligible to participate. The letter further stated that because the Plaintiff was not a common law employee of ISO or any of its subsidiaries on January 1, 2002 or any point thereafter, he was not eligible to participate in and accrue benefits under the Plan. Finally, it responded to Boison's claim that he was entitled to benefits by stating that, if "taken to its extreme, [Boison's argument] would mean that ISO created a new benefit plan, effective as of January 1, 2002, that covered an unknown number of former employees." (Ex. 4 to Gilman Aff. at 2.)

By letter dated September 27, 2010, Boison appealed the Plan Administrator's determination. On October 21, 2010, the Defendant again denied the Plaintiff's appeal. However, pursuant to the Plan, the Defendant provided the Plaintiff with an opportunity to attend a hearing to address his claim. As part of this hearing, the Plaintiff was allowed to make an oral presentation in support of his appeal and to submit any written comments, documents, records, and other information in support of his claim for eligibility. (Ex. 4 to Gilman Aff. at 3.) The hearing took place on November 19, 2010. On December 16, 2010, the Defendant once again denied giving the benefits to the Plaintiff.

On March 1, 2011, the Plaintiff filed a Complaint with this Court, alleging that he was entitled to retirement benefits under the Plan that is both offered and administered by the Defendant. He brought this claim pursuant to Section 502(a)(1)(B) of ERISA, which states that "a civil action may be brought by a

participant . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

## II. THE DEFENDANT'S MOTION TO DISMISS

On April 6, 2011, the Defendant ISO filed a Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The Defendant's motion raises two main arguments. First, the Defendant argues that the Plaintiff lacks standing to bring this lawsuit because he is not entitled to receive retirement benefits under the Plan and thus cannot qualify as an ERISA beneficiary. Second, the Defendant argues that its interpretation of "employee" under the Plan— to not include a former employee such as the Plaintiff—was not arbitrary or capricious so that the Plaintiff's complaint fails to state a claim upon which relief can be granted.

## III. DISCUSSION

### A. Legal Standard on a Motion to Dismiss

Under the now well-established <u>Twombly</u> standard, "[t]o survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" <u>Ruotolo v. City of New York</u>, 514 F.3d 184, 188 (2d Cir. 2008) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)); <u>see ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.</u>, 553 F.3d 187, 196 (2d Cir. 2009). The Second Circuit has explained that, after <u>Twombly</u>, the Court's inquiry under Rule 12(b)(6)

is guided by two principles. <u>Harris v. Mills</u>, 572 F.3d 66 (2d Cir. 2009) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" <u>Id.</u> (quoting <u>Iqbal</u>, 129 S. Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" <u>Id.</u> (quoting <u>Iqbal</u>, 129 S. Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." <u>Iqbal</u>, 129 S. Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiff's favor. <u>Zinermon v. Burch</u>, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990); <u>In re NYSE Specialists Secs. Litig.</u>, 503 F.3d 89, 91 (2d Cir. 2007). Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief" will it grant dismissal pursuant to Fed. R. Civ. P. 12(b) (6). <u>Hertz Corp. V. City of New York</u>, 1 F.3d 121, 125 (2d Cir. 1993).

**B.  As to Whether the Plaintiff Has Standing**

The three elements which comprise constitutional Article III standing are well-established.  A Plaintiff must demonstrate: "(1) an 'injury in fact'—an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the plaintiff's injury and the challenged conduct; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  Faber v. Metropolitan Life Ins. Co., 648 F.3d 98, 102 (2d Cir. 2011) (citing Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

The parties do not appear to contest constitutional standing in this case. Instead, the dispute regarding standing centers on whether Boison has statutory standing.  Under ERISA § 502(a)(1)(B),

> A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the plan, or to clarify his rights to future benefits under the plan.

29 U.S.C. §1132(a)(1)(B).  Participant, in turn, has been defined as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . ."  29 U.S.C. § 1002(7).  The Supreme Court has elaborated on the definition by including "former employees . . . who have 'a colorable claim' to vested benefits."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117 (1989) (quoting Kuntz v. Reese, 785 F.2d 1410, 1411 (9th Cir. 1986)).  In addition, the Court has stated that "[i]n order to establish that

he or she 'may become eligible' for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 117-18, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989); Caltagirone v. N.Y. Community Bancorp, Inc., 257 Fed. App'x 470, 472 (2d Cir. 2007).

ISO contends that because the Plaintiff is not entitled to receive retirement benefits under the Plan, he cannot qualify as an ERISA beneficiary and thus lacks statutory standing. The Plaintiff responds that he is nevertheless a participant because he has a colorable claim to recover retirement benefits under the Plan and therefore "may become entitled to a benefit thereunder."

Despite the Defendant's arguments with regard to the Plaintiff's possible lack of standing, the Court need not resolve this issue. "Unlike Article III standing, which ordinarily should be determined before reaching the merits . . . statutory standing may be assumed for the purposes of deciding whether the plaintiff otherwise has a viable cause of action." Coan v. Kaufman, 457 F.3d 250, 256 (2d Cir. 2006) (citation omitted); see also Lerner v. Fleet Bank, N.A., 318 F.3d 113, 127 (2d Cir. 2003) ("[C]ourts may determine whether a cause of action exists under a given statute, an issue of statutory construction that goes to the merits of the action, before addressing ... statutory standing."), cert. denied, 540 U.S. 1012, 124 S. Ct. 532, 157 L. Ed 2d 424 (2003). Therefore, the Court will presume that Boison has statutory standing and proceed to address the substantive merits of the action.

**C.  As to the Motion To Dismiss**

Beyond the issue of standing, there are two main issues that the Court must address.  The first matter concerns the correct standard this Court should apply in reviewing the decision of the Plan administrator.  The second question is whether the Plaintiff has stated a claim for relief under the appropriate standard.

As a preliminary matter, the Court recognizes that nearly all of the cases that raise similar legal disputes under ERISA arise in the summary judgment context. Nevertheless, this does not preclude the Court from addressing the merits of the Plaintiff's claims at this stage in the litigation.  In fact, one district court in the Second Circuit has expressly found that "[in] some situations, a complaint purporting to state a claim under [ERISA] § 502(a)(1)(B) may be dismissed at the pleadings stage on a Rule 12(b) motion when the court finds that the defendant's interpretation of a plan term was 'reasonable'; and therefore must be upheld under the arbitrary and capricious standard."  Harrison, 417 F. Supp. at 435.

This Court concurs with that logic. Cf. Cintron-Serrano v. Bristol-Myers Squibb Puerto Rico, Inc., 497 F. Supp. 2d 272 (D.C. P.R. 2007) (finding that the issue of the plan administrator's ultimate authority to determine benefits claims of plan participant was not ripe for determination on documentary record available on motion to dismiss benefits claim against plan administrator because the matter was one better resolved after complete discovery upon a developed summary judgment record); Richards v. FleetBoston Financial Corp., 427 F. Supp. 2d 150 (D. Conn. 2006) (noting that the determination of whether an employee was entitled to recover

benefits on her ERISA claims or whether she was entitled to equitable relief was premature on a motion to dismiss).

**1. Appropriate Standard of Review**

When the denial of certain benefits is challenged under ERISA, it "is to be reviewed under a de novo standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L. Ed. 2d 80 (1989). "If the plan grants discretionary authority to the Plan administrator, the administrator's determination should not be overturned unless it is arbitrary and capricious or erroneous as a matter of law." Pelosi v. Schwab Capital Markets, L.P., 462 F. Supp. 2d 503, 510 (S.D.N.Y. 2006) (citing Firestone, 489 U.S at 115); See Winiger v. Wilcox Fuel, Inc., No. 02 Civ. 1671, 2004 WL 97626, at *2 (D. Conn. Jan.12, 2004) ("if the Plan grants the administrator discretionary powers to decide questions of pension benefits, then the question is whether the fiduciaries' interpretation of the contract was arbitrary and capricious.").

It is undisputed, and confirmed by a review of the relevant plan confirms, that the Administrator did have discretionary authority under the Plan. Article IX of the Plan states that "The Plan Administrator shall have the sole authority . . . to make all such determinations and interpretations of the Plan as may be required for its proper administration." The Second Circuit has held that where "plan documents give the trustees the discretion to interpret plan terms, we will not substitute our judgment for theirs unless the trustees' interpretation is arbitrary and

capricious." In Ganton Techs, Inc. v National Indus. Group Pension Plan, 76 F.3d 462, 466 (2d Cir. 1996).

However, the Plaintiff argues that an arbitrary and capricious standard is inappropriate in this case. Rather, he argues that a de novo standard of review is proper, because the Plan Administrator was operating under a conflict of interest. Although the Plaintiff did not make any such allegation in his Complaint, in his opposition to the Defendant's Motion to Dismiss, he contends that ISO has an inherent conflict of interest because it is both the administrator and the payor of retirement benefits under the Plan. (Pl. Opp. at 14.). See Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 112, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008) ("where it is the employer that both funds the plan and evaluates the claims . . . 'every dollar provided in benefits is a dollar spent by ... the employer; and every dollar saved ... is a dollar in [the employer's] pocket.' " (quoting Bruch v. Firestone Tire & Rubber Co., 828 F.2d 134, 144 (3d Cir. 1987)).

It seems clear to this Court that an inherent conflict of interest does exist necessarily from the structural fact of ISO's dual role as both the administrator and the payor. See Lee v. Aetna Life and Cas. Ins. Co., No. 05 Civ. 2960, 2006 WL 345854, at *3 (S.D.N.Y. Feb. 13, 2006) ("there is no dispute that Aetna is a conflicted administrator as the company both makes the disability determination and also pays out on the policy"). Therefore, this conflict is undoubtedly a factor for this Court to consider. See Glenn, 554 U.S. at 116 ("In principle, as we have said, conflicts are but one factor among many that a reviewing judge must take into account."); Firestone, 489 U.S. at 115 ("if a benefit plan gives discretion to an

administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion.").  However, it does not necessarily imply a change in the standard of review from deferential to de novo.  See Glenn, 554 U.S. at 116.  There are "no special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict.  In principle . . . conflicts are but one factor among many that a reviewing judge must take into account."  Id.

    Notwithstanding that an inherent conflict in this case exists and that it is one factor for this Court to consider, the real concern is whether the Plaintiff has articulated any basis to show "that the administrator's conflict of interest affected the choice of a reasonable interpretation."  Hobson v. Metropolitan Life Ins. Co., 574 F.3d 75, 83 (2d Cir. 2009).  Even then, it "is only one of 'several different considerations' that judges must take into account when 'review[ing] the lawfulness of benefit denials.'"  Id. (quoting McCauley v. First Unum Life Ins. Co., 551 F.3d 126, 133 (2d Cir. 2008)); Griffin v. New York State Nurses Ass'n Pension Plan and Benefits Fund, 757 F. Supp. 2d 199, 210 (E.D.N.Y. 2010) ("A conflict of interest is included as one of several different factors that a reviewing judge must take into account in the review of benefit denials and its weight is in proportion with the 'likelihood that [the conflict] affected the benefits decision.'") (quoting Duakovic v. Building Service 32 BJ Pension Fund, 609 F.3d 133, 138-39 (2d Cir. 2010)).  "The arbitrary and capricious standard applies unless the plaintiff can show not only that a potential conflict of interest exists, . . . but that the conflict affected the reasonableness of the administrator's decision . . . and no weight is given to a

conflict in the absence of any evidence that the conflict actually affected the administrator's decision." Griffin, 757 F. Supp. 2d at 210 (internal quotation and citations omitted).

In the present case, Boison argues that ISO's decision to deny him any retirement benefits under the Plan was influenced by a conflict of interest. However, the sole basis for this supposed conflict of interest is ISO's economic self-interest as the funding agent of the plan. The only other allegation regarding whether this conflict actually affected ISO's interpretation is that "ISO's consideration of Boison's claim was one-sided as it did not consider the plain language of the Supplemental Plan . . . these facts suggest a conflict of interest." (Pl. Opp. at 13.) However, this conclusory statement alone does not provide any plausible indication that ISO's inherent conflict actually affected the denial of the Plaintiff's benefits. Consequently, the Plaintiff has not put forth any reasonable allegation or adduced any evidence that the conflict actually affected the reasonableness of the Administrator's decision, such as a history of biased claims administration or an administrator's deceptive or unreasonable conflict. See Tortora v. SBC Communications, Inc., 739 F. Supp. 2d 427, 440–42, 2010 WL 3154566, at *7 (S.D.N.Y. July 30, 2010) (quoting Durakovic, 609 F.3d at 139); Glenn, 128 S. Ct. at 2351–53; McCauley, 551 F.3d at 126 (acknowledging that evidence may lead to the conclusion that an administrator was affected by its conflict of interest where the administrator ignored a detailed medical report without further investigation and unreasonably relied on a single report that was

aligned with its financial interests; had a history of biased claims; and engaged in deceptive practices toward the applicant.).

The Court is aware that the record may lack evidentiary proof upon which the Court could assess the Plaintiff's claim that ISO's inherent conflict affected its benefits determination, because no discovery has yet to be completed at this stage of the litigation. The Plaintiff has not yet had the opportunity to collect evidence that might support his allegation that a conflict of interest influenced the Defendant's decision to deny the additional benefits allegedly due under the Plan. See Thompson v. General Electric Co., No. 01 Civ. 4438, 2002 WL 482862, at *4 (S.D.N.Y. March 29, 2002). Boison may be "entitled to seek discovery through depositions in order to determine information 'relevant to the issue of whether [the plan administrator] had a conflict of interest when it terminated plaintiff's benefits.'" McDonnell v. First Unum Life Ins. Co., No. 10 Civ. 8140, 2011 WL 5301588, at*5 (S.D.N.Y. Nov. 3 2011); Sheehan v. Metro. Life Ins. Co., No. 01 Civ. 9182, 2002 WL 1424592, *6 (S.D.N.Y. June, 28 2002); see also Wagner v. First Unum Life Ins. Co., 100 Fed. App'x. 862, 864 n.1 (2d Cir. 2004), cert. denied, 543 U.S. 958 (2004) ("discovery may be appropriate in some cases where a petitioner seeks to show a conflict of interest.").

However, to justify discovery beyond the administrative record, a plaintiff must demonstrate that the requested discovery would assist in establishing the good cause necessary to expand the record on review. See, e.g., Lane v. Hartford, 06 Civ. 3931, 2006 WL 3292463, *2 (S.D.N.Y. Nov. 14, 2006) (precluding discovery outside the administrative record where plaintiff alleged that additional discovery

was needed, not to explore a conflict of interest, but only to determine whether she received "full and fair review"). "In order to justify the consideration of evidence outside the administrative record, the Plaintiff must demonstrate a conflict of interest *as well as some additional factor*, such as lack of 'established criteria for determining an appeal,' a 'practice of destroying or discarding all records within minutes after hearing an appeal,' or a 'failure to maintain written procedures' for claim review." Locher v. Unum Life Ins. Co. Of Am., 389 F.3d 288, 293, 296 (2d Cir. 2004) (emphasis added); see Yasinoski v. Ct. Gen. Life Ins. Co., No. 07 Civ. 2573, 2009 WL 3254929, at *11 (E.D.N.Y. Sep. 30, 2009) ("[F]or the court to grant permission to take . . . discovery outside the administrative record, the moving party must show more than a mere allegation of the existence of a conflict of interest."); Rubino v. Aetna Life Ins. Co., No. 07 Civ. 377, 2009 WL 910747, at *3 (E.D.N.Y. May 31, 2009) ("[A] party seeking to conduct discovery outside the administrative record must allege more than a mere conflict of interest."); id. at *4-*5 (denying motion to depose Aetna employee involved in decision to reduce plaintiff's long-term disability benefits because plaintiff's assertion "that there exists a structural conflict of interest because Aetna is both the claim insurer and claim administrator" did not, by itself, satisfy the standard to allow discovery outside the administrative record); Schalit v. CIGNA Life Ins. Co. of N.Y., 07 Civ. 0476, 2007 WL 2040587, at *3 (S.D.N.Y. July 12, 2007) (denying motion for general discovery outside the administrative record where plaintiff failed to provide any specific factual allegations to support her entitlement to such discovery).

In the present case, the Plaintiff has not made a single allegation or raised any plausible claim to warrant any additional discovery on the conflict issue. Boison has merely alleged the structural conflict of interest that obviously exists and is acknowledged by the Defendant. This allegation alone would be insufficient for this Court to grant additional discovery. See Pretty v. Prudential Ins. Co. of America, 696 F. Supp. 2d 170 (D. Conn. 2010) (finding insufficient cause to grant additional discovery based on the mere conclusory assertion that the Defendant was conflicted because it determined both eligibility to participate in the Plan and eligibility to receive benefits); Cf. Pelosi, 462 F. Supp. 2d at 510 (finding that because the supposed conflict of interest arose out of allegations of a conspiracy, the court could not determine whether there was any merit absent discovery); Harrison v. Metro. Life Ins. Co., 417 F. Supp. 2d 424, 435 (S.D.N.Y. 2006) (finding that because the supposed conflict of interest arose partly out of allegations that the Defendant faced potential liability for its failure to intervene in response to the Plaintiff's mental deterioration, the court could not determine whether there was any merit absent discovery); Samedy v. First Unum Life Insurance Company of America, No. 05 Civ. 1431, 2006 WL 624889, at *2 (E.D.N.Y. Mar. 10, 2006) (granting limited discovery to assess a potential conflict of interest where defendant was both the insurer and the claim administrator and plaintiff provided a declaration from a former employee indicating that defendant pressured its employees to deny claims).

Accordingly, the Court can now rule at this juncture in the case that the Plaintiff has not put forth any basis for the allegation that the conflict in this case

influenced the Plan Administrator's decision so that, while the Court will consider the conflict, our standard of review should not be less deferential.

In sum, because the Plaintiff can only establish the existence of a conflict, but not its influence on the Plan Administrator, the arbitrary and capricious standard continues to apply where, as here, the plan grants the administrator discretion to construe its terms.  See Glenn, 554 U.S. at 116–17 (holding that under trust law principles, courts should apply a deferential standard of review to the discretionary decisionmaking of a conflicted plan administrator, while taking account of the conflict when determining whether the administrator has abused his discretion); Hobson, 574 F.3d at 83 ("we find unpersuasive Hobson's assertion that de novo review is warranted on the basis of MetLife's structural conflict of interest"); McCauley, 551 F.3d at 131 ("a plan under which an administrator both evaluates and pays benefits claims creates the kind of conflict of interest that courts must take into account and weigh as a factor in determining whether there was an abuse of discretion, but does not make *de novo* review appropriate." ); Lopes v. First Unum Life Ins. Co., No. 09–CV–2642, 2011 WL 1239899, at *4 (E.D.N.Y. Mar. 30, 2011) ("The presence of a conflict of interest does not change the standard of review from deferential to de novo," but "[r]ather ... should act as a 'tiebreaker' " when other factors are equally balanced); In re FedEx Ground Package System, Inc., 722 F. Supp. 2d 1033, 1047 (N.D. Ind. 2010) ("When the terms of a plan grant discretionary authority to the plan administrator, a deferential standard of review remains appropriate even in the face of a conflict," although "[t]he court must

weigh the conflict as a factor when determining whether there was an abuse of discretion").

Therefore, the Court takes the conflict into account as a factor, without additional weight, while applying the arbitrary and capricious standard.

## 2. Application of the Arbitrary and Capricious Standard

### a. Relevant Standard

"Under [the] highly deferential [arbitrary and capricious] standard of review, this Court cannot substitute its own judgment for that of the Plan Administrator and will not overturn a decision to deny or terminate benefits unless it was without reason, unsupported by substantial evidence or erroneous as a matter of law." Fuller v. J.P. Morgan Chase & Co., 423 F.3d 104, 107 (2d Cir. 2005) (internal quotation marks omitted). "This scope of review is narrow, thus we are not free to substitute our own judgment for that of the [Trustees] as if we were considering the issue of eligibility anew." Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995). "Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control." McCauley, 551 F.3d at 132 (internal quotation marks omitted). Therefore, the Court's role is to determine whether the administrator's interpretation was made rationally and in good faith, not whether it was correct. Francia v. WondeRoast, Inc. Profit Sharing Plan, No. 92 Civ. 790, 1995 WL 625705, * 7 (W.D.N.Y. Oct. 19, 1995).

"In determining whether . . . plan administrators have properly interpreted the plan documents, we first must decide whether the wording of those documents

is ambiguous." <u>Klimbach v. Spherion Corp.</u>, 175 Fed App'x 412, 413 (2d Cir. 2006). "If the wording carries an unambiguous meaning, that controls. If not, we must decide whether the party making the interpretation has discretion to interpret the terms. . . . If it does, we review the interpretation for arbitrariness and caprice." <u>Id.</u> In determining whether an interpretation of ambiguous language is arbitrary and capricious, we may rely on extrinsic evidence. . . so long as that evidence is on the administrative record." <u>Id.</u> (internal citations omitted). "If the ambiguity persists after consideration of this extrinsic evidence, and '[it] is necessary for [the court] to choose between two competing yet reasonable interpretations of [the plan],' then '[we] must accept that offered by the administrators.'" <u>Id.</u> at 414 (quoting <u>Pagan</u>, 52 F.3d at 443). "Nevertheless, where the administrator imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, its actions may well be found to be arbitrary and capricious." Id. at 133 (internal quotation marks omitted).

This entire action is based upon the Plan Administrator's interpretation of one word: "employee." Accordingly, this Court must determine whether the term is itself ambiguous, and if so, whether the Defendant's interpretation of the term was reasonable under an arbitrary and capricious standard.

### b. Ambiguity

The Court finds that the plain language of the term "employee" as utilized in the Plan is, on its face, ambiguous. The word is defined as a "common law employee"; however, this definition does not assist in clarifying the ambiguity. This term can, in theory, include both former and current employees. <u>See, e.g.</u>,

Robinson v. Shell Oil, 519 U.S. 337, 345 (1997) (interpreting "employees" under Title VII to include "former employees").  The plain language of the Plan simply does not impose any requirement that the employee be employed as of a certain date.  Indeed, the ambiguity of this term is highlighted by the fact that in 2009, when the Plan was amended and restated, the Defendant added a temporal limit that an employee was "a common law employee of any Company *who was hired by such Company before March 1, 2005*."  While this definition displays no intent to cover former or retired employees, it also does not demonstrate an intent to exclude such employees or impose a requirement that an "employee" must be a current employee.

The Plaintiff cites to the Supreme Court decision in Robinson with regard to the interpretation of the term "employee" in the Title VII context to support his assertion that "employee" plainly and unambiguously includes both current and former employees.  However, as the Court expressly stated, the use of the term "employee" in other contexts is "largely irrelevant, except to the extent that they tend to rebut a claim that the term 'employee' has some intrinsically plain meaning."  Robinson v. Shell Oil Co., 519 U.S. 337, 344, 117 S. Ct. 843 (1997).

In addition, the Plaintiff argues that because the term "employee" is ambiguous, that it must be interpreted against its drafter, the Defendant.  However, this Court rejects the argument that this doctrine of contract interpretation is applicable in the instant case because it "does not apply to plans, such as this one, that are reviewed under the arbitrary and capricious standard."  Caidor v. Chase

Manhattan Bank, 29 Fed App'x 704, 706 (2d Cir. 2002) (citing Pagan, 52 F.3d at 443-44 (citations omitted))

Thus, the relevant inquiry is whether the Defendant's interpretation of the ambiguous term "employee" was arbitrary and capricious or if it was reasonably construed.

### c. As to the Administrator's Interpretation

As stated above, if an administrator and a claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation of the plan should control. In looking at "reasonableness" within the framework of an arbitrary and capricious analysis, courts have considered (a) whether the defendant has consistently interpreted a term in a plan in a particular way, (b) whether industry practice is consistent with the defendants' interpretation, or (c) whether any legal authority supports their assertion that the interpretation is "reasonable." See Smith v. Rochester Tel. Bus. Mktg. Corp., 786 F. Supp. 293, 299 (W.D.N.Y.1992), aff'd, 40 F.3d 1236 (2d Cir. 1994) (table) ("The consistency of prior interpretations of a plan provision is a factor that the court may consider in determining whether a given interpretation is arbitrary and capricious."); Semmler v. Metropolitan Life Ins., No. 94 Civ. 5549, 1995 WL 55930, at *11 (S.D.N.Y. Sept. 20, 1995) (granting summary judgment to defendants where defendants submitted evidence that denial of benefits conformed with its own historical practice and that such practice was "not uncommon in the medical field").

First, it is proper for this Court to look to other sections of the Plan to illuminate what the term "employee" may mean and to determinate whether the

Defendant has consistently interpreted this term in a particular way. Despite the Plaintiff's contentions to the contrary, the other provisions do not evince any inconsistency with the Administrator's interpretation because they do not plainly contemplate that former employees will make use of the Plan. For example, Article III of the Plan discusses eligibility requirements in prospective terms. In particular, Section 3.1 states that "[a]n Employee *shall become a participant in the Plan* during the first year in which the Employee's Compensation exceeds the limitations under Code Section 401(a)(17) for that year." The forward looking nature of this provision shows that it would not be inconsistent for the Administrator to interpret the Plan to not retroactively cover former employees.

In addition, although the Plaintiff contends that another provision of the Plan makes provision for "separated employees" under Internal Revenue Code §409A and that this suggests an intent that such separated employees be included in the eligibility of the Plan, this argument is unavailing. Section 409A regulates the treatment for federal income tax purposes of nonqualified deferred compensation. The Plan's reference to 409A in connection with the distribution of benefits under a nonqualified deferred compensation plan that can be payable upon an employee's separation from service, does not suggest that previously separated employees, before the enactment of the Plan itself, are included in the eligibility of the Plan. Instead, it is entirely reasonable that the Plan is referring to the future separation of employees who are already eligible under the Plan's provisions and thus entitled to payments.

Second, the Plaintiff relies upon the prior retirement plan that was in place when he was employed by the Defendant, SERP, to support his contention that the Administrator's interpretation was arbitrary and capricious. In particular, the Plaintiff claims that he was vested in SERP, so that when ISO eliminated it and replaced it with the Plan, it did not intend to eliminate the rights of all former employees to collect benefits who were vested participants in SERP. As an initial matter, the Defendant disputes whether the Plaintiff was even vested in SERP, because he did not meet the age requirements. Notwithstanding this dispute, the Court finds it to be reasonable that the Defendant did not make the two plans contingent on one another or connected in any way, even though the plans were enacted in succession to accomplish a similar purpose. There is nothing in either plan that expressly suggests that participation in SERP qualified an employee for participation in the Plan, so as to make ISO's determination arbitrary and capricious. The Defendant's position is a rational one—that its intentions in enacting the Plan were to provide additional benefits to employees who may have already accrued benefits by virtue of their service under SERP but who continued to work under the new Plan.

Third, the Plaintiff points out that he does collect under ISO's various pension plans and that he began to receive retirement benefits under the Qualified Plan in August 2010. Boison has submitted W2 forms from 2006 in support of this assertion. (Livoti Aff. Ex. B.) However, this fact does not bolster the Plaintiff's claim that the Administrator's decision was arbitrary and capricious. The fact that the Plaintiff may qualify for other plans after his active employment ceased does

not automatically lead to the conclusion that he qualifies for benefits under the plan at issue.

Finally, although intent is not determinative, the Defendant raises a persuasive argument that ISO would never have intended to open up a retirement plan to any and all past employees. Although the Plan eliminated the age 55 requirement that previously existed in SERP, this does not suggest that the Plan was intended to extend benefits to employees who had already terminated their employment without qualifying for benefits under the Plan. Moreover, significantly, ISO's determination of benefits with regard to this particular Plaintiff is consistent with ISO's application of the Plan to all other employees. All individuals who are currently accruing benefits under the Plan or who have received benefits under the Plan are either (1) individuals who are currently employed by the Defendant, or (2) former employees who were so employed on or after January 1, 2002. This helps to further refute any allegation of arbitrariness or caprice made by the Plaintiff.

Therefore, after a review of the record and the contentions, the Court concludes that the Defendant's interpretation of the Plan was a reasonable one. It is clear that "[w]here both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the [administrator's] interpretation must be allowed to control." Jiannetto v. Wash. Mutual Bank, No. 04 Civ. 4205, 2007 WL 952062, at *5 (E.D.N.Y. Mar. 28, 2007) (quoting Pulvers v. First UNUM Life Ins. Co., 210 F.3d 89, 92-92 (2d Cir. 2000).

Accordingly, the Court finds that the Plaintiff has failed to plead sufficient facts to state a plausible claim that he is entitled to relief because the decision of the plan administrator to deny retirement benefits to him was arbitrary and capricious. Therefore, the Plaintiff's complaint fails to state a claim upon which relief may be granted and the Rule 12(b)(6) motion to dismiss the complaint is granted.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Defendant's Motion to Dismiss the Complaint is granted. The Clerk of the Court is respectfully directed to mark this case as closed.

**SO ORDERED.**

Dated: Central Islip, New York
December 17, 2011

___*/s/ Arthur D. Spatt*_____
ARTHUR D. SPATT
United States District Judge